UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LANCE P.,[1]

                                   Plaintiff,             Case # 21-cv-06123-FPG

v.                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                                   Defendant.

## INTRODUCTION

On February 27, 2018, Plaintiff Lance P. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and Supplemental Security Income under Title XVI of the Act. Tr.[2] 187-215. The Social Security Administration (the "SSA") denied his claim and Plaintiff appeared at a hearing before Administrative Law Judge John Loughlin on July 24, 2019. Tr. 31-70. At the hearing, Plaintiff and Vocational Expert ("VE"), David Van Winkle, testified. On September 9, 2019, the ALJ issued an unfavorable decision. Tr. 15-30. The Appeals Council denied Plaintiff's request for review on August 2, 2020, making the ALJ's decision the final decision of the SSA. Tr. 4-9. Plaintiff then appealed to this Court.[3] ECF No. 1.

Plaintiff moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 and the Commissioner moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 15, 16. For the reasons that follow, Plaintiff's motion is GRANTED,

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 14.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

## LEGAL STANDARD

### I.      District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and

work experience.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

### I.      The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 26, 2017, the alleged onset date.  Tr. 20.  At step two, the ALJ found that Plaintiff has several severe impairments, including migraine headaches.  Tr. 20.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments.  Tr. 21.  The ALJ determined that Plaintiff maintained the RFC to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand and/or walk for up to four hours in an eight-hour workday."  Tr. 22.  The ALJ also found, among other things, that Plaintiff can never be exposed to strobe lights, flashing lights or bright lights, such as those found on a theatre stage. Further, Plaintiff is able to understand and remember simple instructions, make simple work-related decisions, and carry-out simple instructions.  *Id.*  In formulating the RFC, the ALJ considered the symptoms that Plaintiff alleged and their consistency with objective medical evidence. The ALJ also evaluated the intensity, persistence and limiting effects of Plaintiff's symptoms.

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. Tr. 27. At step five, based on testimony provided by the VE, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform: Office Helper (4,000 jobs),

Copy Machine Operator (7,500 jobs), and Storage Facility Rental Clerk (21,000 jobs).  Tr. 28.  As such, the ALJ found that Plaintiff was not disabled, as defined under the regulations.

## II.    Analysis

Plaintiff challenges the ALJ's decision on the following three grounds: (1) the ALJ's determination at step five is not supported by substantial evidence, (2) the ALJ's RFC determination is not supported by substantial evidence, and (3) the ALJ applied the wrong legal standard when assessing Plaintiff's credibility.  Because this Court agrees that remand is required under Plaintiff's first argument, it does not address Plaintiff's other arguments.

At step five of the disability determination, the ALJ is obligated to show that there are a significant number of jobs available in the national economy that Plaintiff is capable of performing. 20 C.F.R. § 416.966(b)[4] ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant] is able to meet with [their] physical or mental abilities and vocational qualifications."). This requirement has two components. The first component requires the ALJ to determine that there are jobs that Plaintiff is capable of performing, considering the limitations articulated in the RFC. 20 C.F.R. § 404.1520(a)(4)(v). The second component requires that these jobs collectively add up to a "significant number." 20 C.F.R. § 404.1566 ("We consider that work exists in the national economy when it exists in significant numbers. …Isolated jobs that exist only in very limited numbers … are not considered work which exists in the national economy.").

Plaintiff argues that the Commissioner did not meet his burden of satisfying the first component of step five with respect to the jobs of Storage Facility Rental Clerk (21,000 jobs) and Copy Machine Operator (7,500 jobs). If true, Plaintiff further argues that that leaves only one other

---

[4] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

job that Plaintiff does not dispute he could perform, Office Helper (4,000 jobs). ECF No. 15 at 6-10. However, since there are only 4,000 Office Helper jobs available in the national economy, the second component of step five remains unsatisfied. As result, the step five determination is not supported by substantial evidence. This Court agrees.

   A.  Jobs Plaintiff can Perform.

In order to satisfy the first component of the ALJ's burden—finding jobs that Plaintiff can perform given his RFC—the ALJ may consult a VE. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) ("In determining whether an applicant is entitled to disability benefits, an ALJ may consult a series of sources, including a VE."). However, the ALJ may not rely on the VE's testimony if such testimony conflicts with another reliable source of job information, without probing and reconciling the conflict. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019) (the ALJ must "elicit a reasonable explanation for [any] conflict before relying on the vocational expert's testimony."). A conflict necessarily arises if the VE proposes a job whose duties, obligations or requirements, as described by another reliable source of job information, exceeds Plaintiff's RFC limitations.  That is because, in so proposing, the VE is essentially testifying that the job requirements do not exceed the RFC limitations while another reliable source simultaneously describes the job requirements as exceeding the RFC limitations. That is a conflict that the ALJ is required to probe and reconcile. *Id.* ("[T]he ALJ is required to reconcile the inconsistency.").

The SSA has deemed the DOT to be a reliable source of job information. *See* 20 C.F.R. § 404.1566(d)(1). It has also announced that it "rel[ies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." *Pol'y Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational*

*Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P

(Dec. 4, 2000). Accordingly, much of the case law involving the ALJ's duty to reconcile conflicts

focuses on conflicts with the DOT. *See Lockwood*, 914 F.3d at 92 ("[The] Commissioner … must

identify and inquire into all those areas where the expert's testimony seems to ... conflict with the

[DOT].") (citations omitted); *Josie T. v. Comm'r of Soc. Sec.*, No. 21-CV-6368S, 2023 WL

2259812, at *6 (W.D.N.Y. Feb. 28, 2023); *Ronald S. v. Kijakazi*, No. 20-CV-1656, 2023 WL

21222, at *3 (W.D.N.Y. Jan. 3, 2023).

 The DOT is not the only source of reliable job information against which to compare the

testimony of a VE. Indeed, 20 C.F.R. § 404.1566(d) lists four other sources of reliable job

information that an ALJ may consult, and that list is not exhaustive, but exemplary. *Mussara v.*

*Berryhill*, No. CV 17-4316, 2019 WL 102406, at *4 (D.N.J. Jan. 4, 2019) ("[T]he plain language

of § 404.1566(d) states, the listed sources [of "reliable job information"] are merely examples; the

list is not exhaustive or exclusive."). In fact, in addition to the list of sources in the regulations,

many courts have also expected the ALJ to be alert to conflicts that result from the application of

common sense and common experience. *Bravo v. Colvin*, No. ED CV 15-02575, 2016 WL

7441597, at *3 (C.D. Cal. Dec. 27, 2016) (["A]n ALJ may resolve potential conflicts between an

RFC limitation and the DOT by *relying on common sense* to interpret the DOT's job

descriptions.").

 However, the role of employing common sense and common experience to determine the

presence of a conflict is not boundless in its reach. Rather, "the more obscure the job, the less

likely common experience will dictate the result." *Lamear* 865 F.3d at 1205. On the other hand,

where the job at issue is so widely known as to actually be common, it would be difficult for courts

to ignore the wisdom of such broadly shared experience. *See, e.g.*, *Snyder v. Comm'r of Soc. Sec.*,

No. 17-12147, 2018 WL 4016971, at *7 (E.D. Mich. July 24, 2018) ("[T]he *common experience* of anyone who has ever eaten in a restaurant includes observations that waitresses are required to lift trays using both hands and that serving food often requires holding a tray with one outstretched arm while picking up a plate and reaching toward the guest's table with the other." (emphasis added)); *Jalos v. Berryhill*, No. EDCV 17-01363, 2018 WL 2276637, at *7 (C.D. Cal. May 16, 2018) (noting that common experience relating to the position of cashier "leads to the conclusion that it would be likely and foreseeable for a cashier to need to frequently reach with both arms to perform the duties of the job"). In both *Snyder* and *Jalos*, the waitress and cashier jobs presented facts that were so widely known and universal that the courts in those cases rightly looked to those common experiences and applied common sense to determine the presence of a conflict that the ALJ should have explored.

Once a conflict between the VE's testimony and the RFC has been made apparent on the record either by reference to the DOT or common sense, the ALJ is obligated to probe the VE further, elicit a reasonable explanation for the conflict, and reconcile the conflict. *Lockwood* 914 F.3d at 93 (stating that it is "the Commissioner's duty to identify, explain and resolve apparent conflicts"). If the ALJ does not so probe, then the ALJ's reliance on the VE's testimony with respect to that job is not supported by substantial evidence. *Lockwood*, 914 F.3d at 94 (ordering remand because "the Commissioner's denial was based on evidence that contained an apparent conflict with the Dictionary's authoritative guidance, and yet the Commissioner failed to take any steps to explore or resolve that conflict").

      1.  *Storage Facility Rental Clerk*

Plaintiff argues that the ALJ has not met his burden of showing that Plaintiff can perform the job of Storage Facility Rental Clerk because the job, as described in the DOT, conflicts with Plaintiff's RFC. ECF No. 15 at 7. This Court agrees.

The RFC states that Plaintiff "is able to understand and remember simple instructions, make simple work-related decisions, and carry-out simple instructions." Tr. 22. However, a Storage Facility Rental Clerk is expected to employ more advanced reasoning skills. According to the DOT, a Storage Facility Rental Clerk will need to exercise a reasoning level of 3, which is defined as being able to "carry out instructions furnished in written, oral, or diagrammatic form" as well as "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702, Scale of General Education Development, Reasoning Development, Level 3. By its own terms, the definition of reasoning level 3 makes it clear that a Storage Facility Rental Clerk is not only expected to carry out a full range of instructions, not merely "*simple* instructions," but also exercise advanced problem-solving skills "involving *several* concrete variables." *Id.* (emphasis added). Further, given that each reasoning level is progressively more advanced than the preceding reasoning level, a comparison to reasoning level 2, which requires the ability to carry out "detailed instructions," makes the advanced nature of reasoning level 3 that much more apparent. *Id.* at Level 2. This conflict between Plaintiff's RFC and the reasoning level assigned to the Storage Facility Rental Clerk job in the DOT is a conflict that requires probing and reconciliation by the ALJ. *See Susan G. v. Comm'r of Soc. Sec.,* No. 20-CV-830, 2021 WL 1920815, at *4 (W.D.N.Y. May 13, 2021) (in a case where the reasoning levels required for the jobs did not match the RFC, the court said "with no explanation for these unresolved, diametrically opposed conclusions, this Court finds that the ALJ's decision is not supported by substantial evidence at Step 4, and that the

Commissioner failed to carry his burden at Step 5."); *C.H.C. v. Comm'r, Soc. Sec. Admin.*, No. 20-CV-02428, 2022 WL 950433, at \*8 (D. Colo. Mar. 29, 2022) (Remanding to the SSA on the basis that "a limitation to simple  instructions is inconsistent with both level-two and level-three reasoning."); *Keller v. Berryhill*, 754 F. App'x 193, 197 (4th Cir. 2018) (Summary Order) ("A limitation to short and simple instructions appears more consistent with Reasoning Development Level 1 or Level 2 than with Level 3.").

Unfortunately, instead of probing the conflict as required under *Lockwood*, the ALJ accepted the testimony without any specific challenge on this point. Posing a general question about whether inconsistencies exist in the VE testimony, as the ALJ did in this case, is not enough; neither is a VE's unreasoned response.  *See* Tr. 68 ("Question: with respect to the first hypothetical, has your testimony been consistent with the DOT? Answer: Your Honor, it has been, with the exception of addressing the limited weight-bearing, the limited standing and walking, the four of eight. There, I've relied upon my profession knowledge and observations, information obtained over the last 29 and a half years of performing – providing vocational rehabilitation services, interviewing employers and employees, performing job analysis onsite."); *Lockwood*, 914 F.3d at 93 (noting that the Commissioner's duty "to identify and resolve apparent conflicts between [the Dictionary] and [vocational expert] testimony ... is not fulfilled simply by taking the [vocational expert] at his word"). The transcript of the hearing shows that the ALJ merely asked the VE whether any inconsistency existed. Tr. 68. The VE replied in the affirmative, but only addressed inconsistencies relating to Plaintiff's restrictions respecting weight-bearing and standing and walking. *Id.* The ALJ did not probe any further, nor did he specifically ask the VE to explain whether the Storage Facility Rental Clerk job would require Plaintiff to exercise advance reasoning skills beyond the limits of his RFC—even though the DOT described the job as requiring such

advanced reasoning. Because of this error, the Commissioner has not demonstrated that Plaintiff

is functionally capable of performing the job of Storage Facility Rental Clerk. *Lockwood*, 914

F.3d at 94.

2. *Copy Machine Operator*

Plaintiff further argues that the ALJ has not met his burden with respect to the Copy

Machine Operator job. Specifically, Plaintiff argues that Copy Machine Operator job would

expose him to "bright lights on the machine that flash when the copy occurs." ECF No. 15 at 9.

Defendant counters that the DOT is silent as to whether the job of a Copy Machine Operator

requires exposure to flashing lights. However, "[t]o the extent that the Commissioner attempts to

rely upon the absence of an express …requirement [in the DOT], her argument is unpersuasive."

*Jalos* at *7. This is not a case where the DOT is silent with respect to a particular mental or physical

requirement. *See Doty v. Colvin*, No. CV 15-00507, 2016 WL 1089171, at *5 (C.D. Cal. Mar. 18,

2016) (finding "no conflict" between VE's testimony and the DOT "when the DOT is silent about

*a particular mental or physical requirement*." (emphasis added)). Nor is this a case where "based

on common experience, it is unlikely and unforeseeable" that the job identified would require more

than Plaintiff's RFC permits. *Lamear*, 865 F.3d at 1205. Instead, this is a case where the DOT's

silence relates to the object of the job itself—a photocopier. It is a matter of common sense that a

photocopier involves the use of bright lights that flash when the copying occurs. Much like the

jobs of a waitress and cashier, experience with photocopiers is so broadly shared that reliance on

this common-sense knowledge drawn from common experience cannot be ignored.[5]

---

[5] Every person currently reading this opinion has at some point made a photocopy and, in the process of so doing, has very likely experienced the flashing light of the machine when accidently lifting the lid too soon, or worse, has been unable to avoid the bright flash when photocopying a book or larger item. It does not require a leap of imagination to extrapolate from these common experiences that the job of a Copy Machine Operator will indeed involve exposure to flashing lights multiple times each day.

In his RFC determination, the ALJ expressly restricted Plaintiff from exposure to "strobe lights" and "flashing lights." During the hearing, the ALJ was even invited by the VE to clarify how broadly this restriction applied, and the ALJ further emphasized that the restriction applied to "*any* strobe lights" and "*any* flashing lights." Tr. 67 (emphasis added). Having raised this point for clarification and heard the ALJ's broad intentions with respect to the restrictions against any flashing lights, the VE still proposed the job of Copy Machine Operator, and the ALJ failed to inquire into the apparent contradiction that the job would require more than Plaintiff's RFC permits, insofar as it would expose him to flashing lights multiple times each day. *Lamear*, 865 F.3d at 1205. Therefore, the Commissioner has not met its burden that Plaintiff can perform the job of Copy Machine Operator.

B.  Significant Numbers

Since there is not substantial evidence to support the conclusion that Plaintiff can perform the job of Storage Facility Rental Clerk or Copy Machine Operator, that leaves only the job of Office Helper. Plaintiff does not challenge whether the job of Officer Helper exceeds what the RFC permits, so the Court accepts the ALJ's determination that this job is suitable for Plaintiff.

Nevertheless, the Court must determine whether the job of Office Helper exists in "significant numbers" so as to satisfy the Commissioner's burden at step five. The SSA's regulations state that "[a]ny other work (jobs) that you can adjust to must exist in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(1). Courts in this district have generally determined that at least 9,000 jobs amounts to a significant number that is sufficient to satisfy the regulatory requirement. *See Sarah Ann Z. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01110, 2021 WL 1206516, *8 (W.D.N.Y. March 31, 2021) (finding that two jobs the VE identified, totaling 9,840 jobs, "significant"); *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177-78 (W.D.N.Y.

2018) (finding that the four jobs that the VE identified, totaling 9,046 jobs available nationally, is "significant"). On the other hand, where jobs exist in numbers below 9,000, courts in this Circuit have been reluctant to find that such low numbers constitute a "significant" amount. *See Renee D. v. Commissioner*, No. 17-CV-0667, 2018 WL 4266044, *4-5 (N.D.N.Y. 2018) (three available jobs with a collective number of 5,688 jobs available nationally is not "significant"); *Hamilton v. Commissioner*, 105 F. Supp. 3d 223, 231 (N.D.N.Y. 2015) (three available jobs with a collective number of 5,160 jobs available nationally is not "significant").

Per the VE's testimony, there are only 4,000 Office Helper jobs in the national economy. Based upon *Renee* and *Hamilton*, this Court finds that 4,000 Office Helper jobs is not "significant." 20 C.F.R. § 404.1566 ("Isolated jobs that exist only in very limited numbers … are not considered work which exists in the national economy"). The Commissioner, therefore, failed to meet his burden at step five, and the ALJ's determination that there are jobs available in significant numbers in the national economy that Plaintiff can perform is not supported by substantial evidence.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment, ECF No. 15, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 16, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated:  March 20, 2023
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York